[Civil No. 470.   Filed January 23, 1896.]

[44 Pac. 299.]

## J. A. McRAE, Plaintiff and Appellant, v. THE COUNTY OF COCHISE, Defendant and Appellee.

1. CONSTITUTIONAL LAW—COUNTIES—REWARDS — LIMIT UPON INDEBTED-NESS—LAWS OF ARIZ. 1889, ACT NO. 18, APPROVED MARCH 19, 1889 —HARRISON ACT, 1ST SUPP. REV. STATS. U. S., P. 503, SECS. 4, 7 (ORGANIC LAW ARIZ., REV. STATS. 1901, PAR. 63)—VALIDITY.—Act No. 18, *supra,* provides that the boards of supervisors of the various counties are required to offer a reward of not to exceed three thousand dollars to any person or persons who shall be first in obtaining an artesian well in the county, conforming to the specifications of the act; that after completion of the well, upon notice to the board, the board shall examine the well, and if satisfied that the requirements of the act have been met, shall draw a warrant on the treasurer for the amount of the reward; that all expenses incurred shall be a charge against the county. The fourth section of the Harrison Act, *supra,* provides that no county in any territory shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per cent of the value of the taxable property within such county; and all bonds or obligations in excess of such amount given by such corporation shall be void, etc. Section 7 of the Harrison Act is as fol-

lows: "That all acts and parts of acts hereafter passed by any territorial legislature in conflict with the provisions of this act shall be null and void." No judgment can be rendered for plaintiff in an action upon an account presented by plaintiff against the county of Cochise for a reward offered under the provisions of act No. 18, *supra,* the act being void, as creating an obligation prohibited by the Harrison Act, *supra,* it appearing from the record that the county of Cochise was indebted in an amount in excess of four per cent on all the taxable property in the county.

BAKER, C. J., concurs upon this ground alone.

2. HARRISON ACT—"OBLIGATION"—DEFINED.—"Obligation" is defined to be "a tie which binds us to pay or do something agreeably to the laws and customs of the country in which the obligation is made."

3. EVIDENCE—PRESUMPTIONS—MONEY IN TREASURY TO MEET INDEBTED-NESS.—It is not to be presumed that there was money in the county treasury with which the indebtedness of a county could be discharged where the evidence discloses that the county is at the time heavily indebted.

4. CONSTITUTIONAL LAW—REV. STATS. U. S., SEC. 1851, ORGANIC LAW ARIZ., REV. STATS. ARIZ. 1901, PAR. 15—"RIGHTFUL SUBJECT OF LEGISLATION" CONSTRUED—PUBLIC USE—LAWS ARIZ. 1889, ACT NO. 18, APPROVED MARCH 19, 1889—VALIDITY.—Section 1851, *supra,* provides: "The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States." The phrase "rightful subject of legislation," used in said act of Congress, must be construed to mean the same thing as the phrase "public use." Act No. 18, *supra,* not being a law for a public use, is void.

5. SAME—HARRISON ACT, 1ST SUPP. REV. STATS. U. S., P. 503, SEC. 1, BEING PAR. 63 ORGANIC LAW, REV. STATS. 1901 — COUNTIES — RE-WARDS—LAWS ARIZ. 1889, ACT NO. 18, APPROVED MARCH 19, 1889—SPECIAL LAW—VALIDITY.—Section one of the Harrison Act, *supra,* contains the following: "That the legislature of the territories of the United States . . . shall not pass local or special laws in any of the following enumerated cases; that is to say: . . . Granting to any corporation, association, or individual any . . . privilege, immunity, or franchise whatever. . . ." Act No. 18, *supra,* provid-ing for the payment of a reward by the county to the first one obtaining a flowing well, is void as a special act in conflict with section 1 of the Harrison Act.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. Joseph D. Bethune, Judge. Affirmed.

The facts are stated in the opinion.

Barnes & Martin, for Appellant.

The law is general in terms; it applies to all counties; authorizes and requires the offer of a reward to whoever shall first obtain a flowing stream.

The Harrison Act prohibits the passing of "local or special laws." But this is not a local or special law. Any individual in any county may avail himself of the provisions of the act, and each county is required to offer the reward.

It is also urged that the county cannot pay the reward because the county is in debt in excess of four per centum of the taxable property. The act requires the county to make this offer, and to do so as required by the law is not the creation of a debt by act of the county.

The Harrison Act does not prohibit the legislature from imposing a debt upon the county.

No question is raised by the answer or by the stipulation but that the money to pay this reward is in the treasury. The presumption is that it is there. To claim that this is a debt prohibited by this legislation is to claim too much.

It was intended that the counties, after reaching a limit of four per centum, should "pay as you go"; that is all. So here the statute requires the counties to offer a reward for the sinking of artesian wells; the county does so. Appellant avails himself of that offer, and demands his money. The county can pay, and should pay, out of the funds in the treasury, out of the tax levy. This does not violate this limitation of the law.

It was held in *Bank for Savings* v. *Grace,* 102 N. Y. 313, 7 N. E. 162, that "The indebtedness referred to in the constitution [same as this act] is an indebtedness to be met in the future by taxation." Dillon on Municipal Corporations, sec. 136.

See *Jacksonville Ry. Co.* v. *City,* 114 Ill. 562, 2 N. E. 478; *East St. Louis* v. *East St. Louis etc. Coke Co.,* 98 Ill. 415, 38 Am. Rep. 97; *Valparaiso* v. *Gardner,* 97 Ind. 1, 49 Am. Rep. 416; *Appeal of City of Erie,* 91 Pa. St. 398; *Grant* v. *Davenport,* 36 Iowa, 396.

George W. Swain, District Attorney, for Appellee.

Examination shows that every authority cited by appellant relates to matters and things which were deemed to be neces-

sary to carry on the government. An artesian well is not a necessity. Even if it were, the weight of authority is against the expenditure for necessities in excess of the inhibition. *French* v. *Burlington,* 42 Iowa, 614; *Hebard* v. *Ashland,* 55 Wis. 145, 12 N. W. 437; *People* v. *Johnson,* 6 Cal. 499; *State* v. *Atlantic City,* 17 Am. & Eng. Corp. Cases, 592; *Prince* v. *Quincy,* 105 Ill. 138, 44 Am. Rep. 785.

Yet the authorities recognize the distinction between necessary and unnecessary expenses: "Power to provide for the expenses attendant upon the maintenance of municipal government is necessary to preserve its existence." *Law* v. *People,* 87 Ill. 385.

Section 4 of the Harrison Act is a prohibitive law which prohibits. *Litchfield* v. *Ballon,* 114 U. S. 190, 5 Sup. Ct. Rep. 820.

If the board had issued the written obligation of the county in payment of this claim, and those obligations passed to others, they would have been void. *Buchanan* v. *Litchfield,* 102 U. S. 278; *Louisiana* v. *Wood,* 102 U. S. 294.

ROUSE, J.—This is an action upon an account rejected by the board of supervisors of Cochise County, presented by J. A. McRae against the county of Cochise for two thousand dollars, as a reward to him for obtaining the first flowing well in said county. It appears from the record that the board of supervisors offered a reward of two thousand dollars, and McRae had obtained the first flowing well in said county, and that he was, under the facts in the case, entitled to said reward, provided the act of the legislative assembly, approved March 19, 1889, (Laws 1889, p. 35,) is not in conflict with the act of Congress of 1886, commonly called the "Harrison Act." It is shown by the record that the county of Cochise was indebted in an amount greatly in excess of the sum of four per centum on all the taxable property in the county. The fourth section of the said Harrison Act is as follows: "That no political or municipal corporation, county, or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum of the value of the taxable property, within such corporation, county, or subdivision; and

all bonds or obligations in excess of such amount given by such corporation shall be void. That nothing in this act contained shall be so construed as to affect the validity of any act of any territorial legislature heretofore enacted, or any of the obligations existing or contracted thereunder, nor to preclude the issuing of bonds already contracted for in pursuance of express provisions of law, nor to prevent any territorial legislature from legalizing the acts of any county, municipal corporation, or such subdivision of any territory as to any bonds heretofore issued or contracted to be issued.''

Section 7 of said act is as follows: ''That all acts and parts of acts hereafter passed by any territorial legislature in conflict with the provisions of this act shall be null and void.'' The act of the legislative assembly, herein referred to, and on which this action is based, is as follows:—

''Section 1. The boards of supervisors of the various counties are hereby authorized and required to offer as a reward any sum they deem just, not exceeding three thousand dollars, to any person or persons who shall be first in obtaining a flowing stream of not less than seventeen thousand five hundred gallons of water every twenty-four hours for ten days, by means of an artesian well, at any point in their respective counties, not upon a United States military or Indian reservation, railroad lands, or land grants, or within ten miles of any flowing artesian well or one mile from any permanent flowing stream of water.

''Sec. 2. Any person or persons who would avail themselves of the provisions of this act shall, on the completion of said well, give notice of the same to the clerk of the board of supervisors of the county in which said well shall be situated. Upon receipt of said notice the board of supervisors shall immediately cause due examination to be made of said well, and if satisfied that the requirements of the first section of this act have been complied with, they shall draw their warrant on the county treasurer in favor of the person or persons so obtaining flowing water for the sum to which he or they shall be entitled to under the provisions of this act.

''Sec. 3. All expenses by any board of supervisors under the provisions of this act shall be chargeable to the county, and shall be audited and paid by the board as other claims against the county.

"Sec. 4. This act shall take effect and be in force from and after its passage.

"Approved March 19, 1889."

It will be observed that by said act of Congress it is provided that no county shall ever become indebted to any amount, in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property, and, further, that said act makes all bonds or obligations in excess of such amount void. The inhibition in said act is not limited to indebtedness represented by "bonds," but includes "obligations." The indebtedness of the county of Cochise is admitted to have been, at the time this demand was presented, in excess of the limit of four per centum on the taxable property in said county. Therefore, if the reward sued for was an amount which can be properly designated as a debt or an obligation, it is void, and no judgment therefor could be rendered. The word "obligation" is defined to be "a tie which binds us to pay or do something agreeably to the laws and customs of the country in which the obligation is made." A county cannot become indebted, or create an obligation, in any way, excepting in the manner prescribed by law. Said act of Congress is an inhibition against the enactment of a law by the legislative assembly which would permit a county to become obligated for any sum in excess of the limit fixed. It will be observed that the said act of the legislative assembly does not stop with the grant of power to offer a reward for an artesian well, but is mandatory, and requires the boards of supervisors to offer a reward. The boards of supervisors only have the privilege to fix the amount, not to exceed a certain sum. It will further be observed that the amount offered, together with the expenses of taking the proof of the compliance with the terms of the law by the claimant of the reward, is made an obligation, to be paid by the treasurer of the county on a warrant drawn for said reward and the costs. The act itself makes the reward a debt. It is urged by counsel for appellant that, inasmuch as there is no evidence as to how much money was in the treasury of Cochise County at the time this demand was presented, it should be presumed that there was money therein sufficient to meet the said demand. We think that position is erroneous. The evidence discloses the fact that the county was at that time heavily

indebted. It is not to be presumed that there was money in the treasury with which the indebtedness of the county could be discharged. It is not the policy of a state to levy taxes, and draw from the pockets of the people, to be hoarded, the money which should be kept in circulation. The policy is, that the tax is for the purpose of securing revenue sufficient to meet the expenses of the government for a stated period, usually one year, and that the "tax ought to be so contrived as to take out and to keep out of the pockets of the people as little as possible." Cooley on Taxation, p. 8.

Holding, as we do, that the said act of the legislative assembly is void for the reason that it is in conflict with the fourth section of said act of Congress, we further hold that it is void for the reason that it is in conflict with other acts of Congress which are parts of the organic act of this territory. Section 1851 of the Revised Statutes of the United States is a part of said organic act, and is as follows: "The legislative power of every territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States. . . ." The power of territorial legislatures is further limited by the act of Congress commonly called the "Harrison Act." The first section thereof contains the following: "That the legislatures of the territories of the United States . . . shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever, . . . " The act of the legislative assembly under consideration requires the board of supervisors of all the counties to offer a reward, which shall be paid to the person who shall be first in obtaining a flowing well. By said act there can be but one such reward paid in each of the counties of the territory. When one such well is obtained in a county, and the reward is paid, as to that county said act is no longer in existence. It follows from what has been stated that the reward would be a special privilege, granted to the person who obtained the first artesian well in a county, and others who thereafter should obtain such wells could not receive a reward. It will be observed, also, that such well, notwithstanding the payment of the reward, would remain the private property of the owner, in which the county or

the public would have no property right or personal interest, notwithstanding the fact that the public had been compelled to pay for the same. ''Taxes are the enforced proportional contributions from persons and property, levied by the states . . . for the support of government, and all public needs.'' Cooley on Taxation, c. 1; *Perry* v. *Washburn,* 20 Cal. 318. Having no particular clause of the constitution of the United States by which the expression ''rightful subjects of legislation'' can be defined, we are forced to determine its meaning by the language employed in connection therewith, and by the laws on the same subject, both state and national, organic and statutory, existing at that time. Said act is a limitation on the power of the territorial legislatures. Their powers are limited thereby to the subjects which are properly included in said phrase, ''rightful subjects of legislation.'' The constitution of each state of the Union limits the powers of the legislatures thereof. The powers of the legislature of one state may differ materially from the powers granted in another, but in all will be found an inhibition against the enactment of laws which are not for a public use. Laws to preserve the public order, to provide for the enforcement of civil rights and the punishment of crime, to make compensation to public officers and to others who perform services for the public, to protect public property, to erect and keep in repair the necessary public buildings,—all these are laws for public use. We think the phrase ''rightful subject of legislation,'' used in said act of Congress, must be construed to mean the same thing as the phrase ''public use.'' The legislative act under consideration is not a law for a public use. It requires the board of supervisors of each county to offer a reward, not to exceed three thousand dollars, to be paid to the person who shall be first in obtaining an artesian well in said county. It provides for but one such well in a county. Such well remains the private property of the person who obtains it, in which the public has no property interest. Said act requires the payment of the public money to the person who obtains such well, without anything being given by him in return. It appears to us that it would not have been more objectionable if the act had expressly provided that a given sum should be paid from the treasury to the appellant. We do not think the act is for a public purpose. It is not for a

purpose for which a tax can be laid. Cooley on Taxation, pp. 55, 103. "To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it on favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called 'taxation.' This is not legislation. It is a decree under legislative form." *Loan Assn.* v. *Topeka,* 20 Wall. C55.

We think the law is void, also, for the reason that it is a special act, and therefore in conflict with the provisions of the first section of the Harrison Act. In form, it is a general law, in this: that it applies to all the counties. It is general, in this: that the courts would take notice thereof without proof, and without it being pleaded. But, notwithstanding the form and the effect just mentioned, the provisions of the act make it a special act. It provides for a reward for but one flowing well in each county. After one such well is procured, the law is inoperative. It practically ceases to exist. Only one person in a county can receive the reward. It would not have been much more special if it had conferred the privilege to dig an artesian well on some designated person. Legislation is not intended for the present merely. It provides for and anticipates the wants of the future. *Wheeler* v. *Philadelphia,* 77 Pa. St. 338. In a case in Pennsylvania, in which the validity of a law for the classification of counties was under consideration, it was held that a law providing that "all counties having a population of sixty thousand inhabitants, in which there shall be any city incorporated at the time of the passage of this act with a population exceeding eight thousand inhabitants, situate at a distance from the county seat of more than twenty-seven miles by the usual public traveled road," was unconstitutional for the reason that it was special legislation. *Commonwealth* v. *Patton,* 88 Pa. St. 258. It was said, in a case in Ohio: "It is true the act in question is in the form, in a sense, of a general law, but the constitutionality of an act is to be determined by its operation, and not by the mere form it may be made to assume." The act under consideration by that court made provisions with reference to cities of the second class, and, further, of cities of that class having a certain population. Columbus was the only city having the enumerated qualifications. The court

said: ''The effect of the act would have been precisely the
same if the city had been designated by name instead of by
the circumlocution employed.'' And the act was held to be
unconstitutional. *State* v. *Mitchell*, 31 Ohio St. 592. Said
act is void for the reason that it is in conflict with the pro-
visions of section 4 of the Harrison Act, in this: that it cre-
ates an obligation in excess of four per centum of the taxable
property of Cochise County. It is void for the reason that it
is not an act on a ''rightful subject of legislation.'' The
judgment of the district court is affirmed.

Hawkins, J., concurs.

BAKER, C. J.—I wish to be understood as concurring in
the opinion only upon the first point raised,—namely, that the
claim presented to the board of supervisors was illegal because
the county was already indebted to an amount in the aggre-
gate exceeding four per centum on the value of the taxable
property within such county. The act of Congress quoted in
the main opinion, and fixing the limit of county indebtedness
at four per centum on the value of the taxable property with-
in the limits of the county, is a beneficial law, in view of the
past extravagance so manifest in our legislative history, and
ought to be strictly enforced. It stands in the place and
stead of a constitution to the people of this territory, and is
so plainly expressed and worded that there is no room for
construction. Its simple reading carries with it a clear un-
derstanding of its import and meaning. All questions of
policy, all questions of expediency, all questions of local hard-
ships are to be eliminated, for it is to be assumed that all of
these things were fully considered and finally determined in
enacting the law. Our duty is to support it as it is. We have
no just right to add to or take from it one jot or tittle. It is
safe to assume, and hold to it, that Congress meant just what
it said,—no more, no less. When the constitutional limit has
been reached by any county, such county has no further ca-
pacity to make contracts out of which additional burdens may
arise. This disability extends to all forms of indebtedness, as
well as to all purposes. The county is powerless to contract
beyond the limit, and the legislature is equally powerless to
impose any pecuniary obligation upon the county beyond it.
They are both alike confronted by the same disability. It is

claimed that this interpretation will seriously cripple several of the counties in this territory in the administration of their ordinary affairs, since they have already incurred indebtedness up to, and in some instances even beyond, this limit, and must necessarily continue their functions. The answer is obvious. The inhibition is: "Shall ever become indebted in any manner or for any purpose to any amount," etc. If there be such a condition in the financial affairs of any one of the counties, the remedy is with the lawmaking power, not with the courts. The claim presented, being in excess of the limitation fixed, was and is illegal, and that is an all-sufficient reason why it should be rejected.